1
2
3
4
5
6
7                              UNITED STATES DISTRICT COURT

8                             NORTHERN DISTRICT OF CALIFORNIA

9

10   WILL M. PALMER,                              No. C 04-4107 SI (pr)

                    Petitioner,           **ORDER DENYING PETITION FOR**
11                                        **WRIT OF HABEAS CORPUS**

12          v.

     A. LAMARQUE,
13
                    Respondent.
14
     _____/
15

16

17                                    **INTRODUCTION**

18          Will M. Palmer, a California prisoner, filed a pro se petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254 to challenge a prison disciplinary decision.   This matter is now

20   before the court for consideration of the merits of the petition.   For the reasons discussed below,

21   the petition will be denied.

22

23                                     **BACKGROUND**

24          Palmer is in custody serving a life-with-possibility-of-parole sentence following his

25   conviction in the Los Angeles County Superior Court of five counts of first degree murder and two

26   counts of attempted robbery.   His habeas petition does not challenge that conviction, but instead

27   challenges a prison disciplinary decision, made after a hearing, which imposed an 18 month SHU

28

United States District Court
For the Northern District of California

term and loss of 150 days good time credits.[1]   Specifically, Palmer alleges that he was not allowed to present witnesses and documentary evidence, that he was not allowed to have the aid of an inmate or staff helper, that he was not allowed to be present at the hearing, and that the disciplinary decision is not supported by sufficient evidence.

The present action concerns the second of two incidents which occurred within about two hours on December 19, 2002.  Both incidents will be described because the first incident puts the second one in context.[2]

At about 10:00 a.m. on December 19, 2002, Palmer was approached by correctional officer ("C/O") Valdez and sergeant Walker.  They asked to see his identification card.  According to the correctional staff's version, Palmer tried to pull his identification card from Walker, repeatedly tried to walk away, resisted efforts to restrain him, and turned toward Walker and Valdez in an aggressive manner.  C/O Valdez and sergeant Walker put him on the ground and handcuffed him.  A rule violation report was issued for the 10:00 a.m. incident.[3]   Palmer disagrees with this version

---

[1]Petitioner asserts, and respondent denies, that the relevant discipline included an 18 months term in the SHU as well as loss of good time credits.  The record is not completely clear, so for purposes of this analysis the Court assumes that petitioner is correct and the SHU term was imposed.

[2]Palmer also filed a civil rights action concerning the two incidents, Palmer v. Lamarque, C 03-4213 SI.

[3]The disciplinary hearing for the 10:00 a.m. incident was held on January 18, 2003.  The disciplinary hearing for the 11:30 a.m. incident was held on January 12, 2003.  See Resp. Exhs. B and E.  The present action concerns only the January 12, 2003 disciplinary hearing.
Palmer also contends that the disciplinary decision was used a second time, in 2004, to cause him to be housed indefinitely in ad-seg in the SHU in violation of his protections under the Double Jeopardy Clause.  If Palmer wishes to challenge the 2004 ad-seg decision, he needs to file a separate action, as only the January 12, 2003 decision is in question here.  A double jeopardy problem does not arise until the state attempts to punish or try one a second time; the initial punishment or trial presents no double jeopardy concerns.  This is not to suggest there is any merit to Palmer's double jeopardy argument, however.  The Double Jeopardy Clause is not violated by the use of the CDC-115 as a basis for later placing an inmate in ad-seg after his disciplinary term ends.  SHU placement is not punishment to which the Double Jeopardy Clause applies, regardless of whether the placement is for disciplinary  or administrative reasons.  See generally United States v. Brown, 59 F.3d 102, 105 (9th Cir. 1995) (withholding time credits, even if punitive, does not alter the original sentence, it only means the prisoner must serve a larger part of that sentence in prison); id. (change in the place of inmate's confinement "based upon an administrative determination that his disruptive conduct required transfer to a higher security facility--even if 'punitive'--did not alter the original sentence and so did not bar criminal prosecution for that same disruptive conduct").

**United States District Court**
For the Northern District of California

and claims he was subjected to excessive force by these two guards.         At about 11:30 a.m. on December 19, 2002, Palmer had another run-in with correctional staff.   In a CDC-115 rules violation report, C/O Valdez described the incident:

> On Thursday, December 19, 2002, at approximately 1130 hours, while performing my duties as Security Squad Officer # 1, I was collecting DNA specimen samples on Facility "C" along with Lieutenant, G. Salazar, Phlebotomist S. Fagan, Officers B. Gibbs, S. Henley, and Officer R. Lebedeff.   We were in the "C4" Officers Office preparing for DNA collection when Inmate Palmer (H-08789,   C4-132) charged into the office and assaulted me.   I was standing approximately five (5) feet from the office doorway next to one of the desks in the office reading DNA paper work when I heard, "You think you're a big man now." When I looked in the direction of the doorway I saw Inmate Palmer charging at me.   Inmate Palmer abruptly grabbed me around the back of my neck with his left arm, and struck me three (3) times on the left side of my face with his right fist.   I immediately grabbed Inmate Palmer around his waist with my right arm, and grabbed the chest area of his jacket with my left.   I then shoved Inmate Palmer back away from me.   At the same time Officers B. Gibbs, and Officer R. Lebedeff grabbed Inmate Palmer, and pulled him away from me.   As Inmate Palmer was falling he kept hold of my neck with [] his left arm.   During the fall Inmate Palmer managed to turn his back to me at which time I put my right hand on his back, and pushed him forcing him to the floor.   Our combined momentum carried all of us to the floor directly in front of the office doorway where Inmate Palmer fell face down.   At that time I stood up, and Lieutenant Salazar instructed me to stay back.

Resp. Ex. B, p. 1 (errors in original).

On December 27, 2002, Palmer was given written notice on form CDC-115 of the disciplinary charges against him resulting from the 11:30 a.m. incident.

On January 8, 2003, Palmer was put on "management control status" for ten days because he had disrupted the orderly operations of his housing area by placing towels over his cell windows to obstruct staff views of the inside of his cell.   Traverse, Ex. D.   Management control status resulted in removal of all property except a blanket, boxer shorts and toilet paper.   His CDC-115 forms and other papers were removed.

On January 12, 2003, guards came to Palmer's cell to tell him the hearing on the charges for the 11:30 a.m. incident was about to take place.   The CDC-115 form[4] has a handwritten note stating "Inmate Palmer refused to attend his 115 hearing," signed and dated January 12, 2003. Resp. Ex. B, p. 1.   The hearing officer noted in several places that Palmer had refused to attend the

---

[4]The CDC-115 is a multi-part form on which information is entered about the disciplinary event as the matter proceeds from the initial report through the disciplinary hearing.   A single CDC-115 thus may have different parts written by different people, signed by different people, and prepared at different times.

hearing.   Palmer disagrees and contends that he was not allowed to be present at the hearing.   As Palmer describes it, when the officers told him his hearing on the 11:30 a.m. incident was about to be conducted, he "informed the officer that his copy of his 115s RVRs had been confiscated and that petitioner had not yet received the investigators' report.   Petitioner also requested to be provided with the confiscated 115s.   [¶]   This officer informed petitioner that he would inform the senior hearing officer of the situation and gave petitioner the impression that he was going to return with a response to petitioners statement and request.   However, the officer never returned and the hearing was conducted without petitioner being present."   Petition, p. 7d (errors in original).   In an inmate grievance, Palmer described the event slightly differently:   an "officer came to my cell door & requested that I attend" and "I informed these C/Os that my copy of these 115 RVR were confiscated on 1-8-03 by officers . . . along with my other property and for this reason I was unequipped to defend myself against the false charges.   I did not refuse to be at my hearing." Resp. Ex. I, CDC-602 signed Feb. 2, 2003.

Palmer did not have any aid from a staff assistant or investigative employee.   The CDC-115 form states that Palmer was denied staff assistance because he spoke English and had no mental illness such that he required assistance to understand the process.   Resp. Ex. B, p. 2.   The CDC-115 form also stated that Palmer did not meet the criteria for assignment of an investigative employee and had waived it in writing on December 27, 2002.   Id. at ¶. 2, 6.

Palmer exhausted his state remedies for the disciplinary decision of January 12, 2003.   The Monterey County Superior Court's decision rejecting Palmer's state habeas petition is the only reasoned decision from the state court.   The California Supreme Court denied Palmer's habeas petition without comment.

Palmer then filed this action for a writ of habeas corpus.   After reviewing Palmer's petition for writ of habeas corpus, the court issued an order to show cause.   Respondent filed an answer and Palmer filed a traverse.   The matter is now ready for a decision on the merits.

**DISCUSSION**

4

A.      Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams (Terry) v. Taylor, 529 U.S. 362 (2000).

Palmer's claim was adjudicated on the merits in state court. The only reasoned decision is from the Monterey County Superior Court, and that decision is written in a way that makes it unclear whether the court applied the correct legal standard to the issues presented. The superior court identified the issues as being that Palmer's due process rights "were violated because he was not present at his disciplinary hearing and his copy of the RVR was confiscated making him unable to prepare a defense at the hearing." Resp. Ex. C, p. 1. The superior court next identified the "some evidence" standard and cited the relevant U.S. Supreme Court case, Superintendent v. Hill, 472 U.S. 445 (1985), for the evidentiary review. The superior court then wrote, "Petitioner has failed to show the institution's decision is not supported by some evidence. The record clearly shows Petitioner refused to attend the hearing or participate in his future administrative appeals regarding the RVR, battery on a Peace Officer. There are documents reflecting the Petitioner received a copy of the RVR on December 27, 2002, easily within the fifteen (15) days of the alleged battery (December 19)."

The superior court's order is ambiguous. One reading of the order is that (a) there was some evidence of guilt and (b) petitioner refused to attend the hearing and received timely notice. Another reading of the order is that (a) there was some evidence of guilt and (b) there was some evidence that petitioner had refused to attend the hearing and had received timely notice. If the

5

Monterey County Superior Court meant the latter, it erred in determining that due process was satisfied because there was some evidence that Palmer refused to attend the hearing and some evidence that he had received timely notice  The "some evidence" standard correctly applies to only the evidence to support the decision of guilt, and not to the procedural requirements such as attendance at the hearing and timeliness of the notice.  Applying the <u>Superintendent v. Hill</u> "some evidence" standard to deciding whether the procedural protections in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), had been provided would have been an unreasonable application of both those cases.   The court will not give the deference required by § 2254(d) because the superior court's factual findings and legal conclusions are both contaminated by the ambiguity in the order.

B.    <u>Analysis of Claims</u>

        An inmate in California is entitled to due process before being disciplined when the discipline imposed will inevitably affect the duration of his sentence.   <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 484, 487 (1995).   The process due in such a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex.   <u>Wolff v. McDonnell</u>, 418 U.S. at 564-7.   Due process also requires that there be "some evidence" to support the disciplinary decision. <u>Superintendent v. Hill</u>, 472 U.S. 445 at 454.   The Due Process Clause only requires that prisoners be afforded those procedures mandated by <u>Wolff</u> and its progeny; it does not require that a prison comply with its own, more generous procedures.   <u>See</u> <u>Walker v. Sumner</u>, 14 F.3d 1415, 1419-20 (9th Cir. 1994).

        The discipline Palmer received here was an 18-month SHU term and a loss of 150 days of time credits.   Respondent does not dispute that the discipline imposed was sufficiently serious to require due process before it could be imposed.

        1.    <u>Palmer's absence from the hearing</u>

6

**United States District Court**
For the Northern District of California

Palmer contends he was not allowed to attend the hearing, arguing that he did not actually refuse to attend, but only protested to the guards who came to his cell that he was unprepared because his paperwork had been confiscated.  The guards who attempted to bring Palmer to the hearing reported that he refused to attend.

Palmer has not carried his burden of establishing that prison officials refused to allow him to attend the hearing.  When the guards came to get Palmer for the hearing, he did not go with them immediately but instead sent them away to convey his protest that he was unprepared.  Even Palmer's version of the facts leaves unexplained why he chose to send the guards away with his protest rather than simply accompanying them and lodging his protest in person at the hearing. The court finds that Palmer was absent from the hearing but was absent because he chose not to go with the guards who came to his cell to bring him to the hearing.  Palmer's voluntary absence from a hearing did not result in a due process violation.

### 2.    Documentary Evidence and Witness

Palmer contends that he was not allowed to present documentary evidence and witnesses at the disciplinary proceeding.   This allegedly did not comport with Wolff's direction that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  418 U.S. at 566.  The right to present a defense is not absolute and prison officials retain "the necessary discretion to keep the hearing within reasonable limits."  Id.

Palmer's voluntary absence from the hearing makes his claims that he was not able to present documentary evidence and witnesses unpersuasive.  Even if this court ignored the fact that Palmer did not attend the hearing and determined that the documentary evidence and witnesses should have been considered at the hearing, Palmer's claim fails because he has not shown that the documents that had been confiscated precluded him from presenting a defense or would have made any difference at the hearing.

United States District Court

For the Northern District of California

Palmer's paperwork had been confiscated four days before the hearing when he was placed on management control status.   Confiscation of the CDC-115 form concerning the 11:30 incident did not result in Palmer being unable to use it as evidence.   The hearing officer had the CDC-115 form, even if Palmer did not have his own copy.   Palmer has not shown that his own copy of the CDC-115 form had some evidentiary value that the copy available to the hearing officer did not have.[5]

The confiscation on January 8 of the CDC-115 form for the <u>10:00</u> incident also did not preclude the presentation of a defense.   Palmer alleges that had he been able to present his confiscated CDC-115 form from the other December 19 run-in with staff, he would have been able to show that he "was required to be kept away from the 'alleged victim' and also required to be kept in restraints."  Petition, p. 7e.   His argument is not persuasive because the CDC-115 form for the 10:00 incident was not prepared until the next day.   The document would not cast doubt on the truthfulness of the charges for the 11:30 incident a day earlier because it was not then in existence.   The document does not show that at 11:30 a.m. on December 19 Palmer was supposed to be handcuffed and kept apart from the victim.   Even if the document provided evidence to support Palmer's assertion that there is a rule that inmates are to be kept away from staff who they assault, it would not have aided his defense because he was accused of charging into an office <u>unexpectedly</u> and attacking C/O Valdez.

Palmer contends that he was unable to present witness statements.   He fails to clearly identify in his petition and traverse the witness statements he wanted to present, although it appears that he means the three witness statements attached to his petition as Exhibit I.   Two of the witness statements concerned the 10:00 incident and were not relevant to the 11:30 incident.   Indeed, presenting evidence of the 10:00 incident could have been detrimental to Palmer's case because it showed a motive for the 11:30 attack and put Palmer's fighting words of "You think you're a big

---

[5]The confiscation of the CDC-115 form also did not deprive Palmer of the notice of the charge.   Palmer received that notice on December 27, 2002, in sufficient time to be informed of the charges and enabled to marshal the facts and prepare his defense.   <u>Wolff</u>, 418 U.S. at 564. There is no constitutional requirement that the inmate retain possession of the document that gives him notice of the charges throughout the disciplinary process.

man now" in context.   The only witness statement that concerned the 11:30 incident was the statement of inmate Derrick Halbert, but that statement was not prepared until thirteen months after the hearing.   Palmer has not shown that he knew inmate Halbert witnessed the incident or that he had obtained a statement from inmate Halbert in time for his January 12, 2003 hearing.   Palmer signed the form waiving an investigative employee for this CDC-115 proceeding and has offered no evidence that he would have discovered witness Halbert on his own in  time to call him as a witness at the hearing.   <u>See</u> Resp. Ex. B, last page.

### 3.   Absence of Staff Assistant or Investigator

Palmer claims that he was not allowed a staff assistant or investigative employee.   "Where an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff."   <u>Wolff</u>, 418 U.S. at 570.

Palmer signed in writing a waiver of an investigative employee.   There was no due process violation here because the inmate chose to waive the investigative employee, even assuming <u>arguendo</u> that Palmer was entitled to one.   Palmer has not shown that he did not understand the process, so there was no due process violation in not providing a staff assistant to help Palmer understand the process.

### 4.   Sufficiency of the Evidence

The revocation of good-time credits does not comport with the minimum requirements of procedural due process in <u>Wolff</u> unless the findings of the prison disciplinary decision-maker are supported by some evidence in the record.   <u>Superintendent v. Hill</u>, 472 U.S. at 454.   There must be "some evidence" from which the conclusion of the decision-maker could be deduced.   <u>Id.</u> at 455.   An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence.   <u>Id.</u>   The relevant question is whether there

**United States District Court**
For the Northern District of California

1    is any evidence in the record that could support the conclusion reached by the disciplinary

2    decision-maker.  Id.  This standard is considerably lower than that applicable in criminal trials.  Id.

3    at 456.  The Ninth Circuit additionally has held that there must be some indicia of reliability of

4    the information that forms the basis for prison disciplinary actions.  Cato v. Rushen, 824 F.2d 703,

5    704-05 (9th Cir. 1987).

6         The evidence relied upon by the hearing officer in finding Palmer guilty of the charge of

7    battery on a peace officer easily meets Superintendent v. Hill's "some evidence" standard.  There

8    is some evidence that Palmer charged at and attacked C/O Valdez.  The evidence included C/O

9    Valdez's written description of the incident in the CDC-115 form that described Valdez doing

10   paperwork in an office when he heard Palmer say "You think you're a big man now" and charge at

11   him, grabbing Valdez and hitting him three times in the face.  The evidence also included a

12   crime/incident report in which lieutenant Salazar described the incident and related that Salazar

13   saw Palmer hit Valdez several times while Palmer had his arm wrapped around Valdez's neck.  The

14   evidence also included a medical report of injury by a medical technical assistant that noted that

15   C/O Valdez sustained a contusion to his lower left ear and around the left ear, minor scrapes on

16   his lower right ear and right side of his jaw.  Relying on these several sources of evidence, the

17   hearing officer found "that the injuries sustained by officer Valdez are consistent with injuries

18   associated with a battery attack, as the injuries consist of contusions and minor aches and pains.

19   In addition, the fact that Inmate Palmer stated, 'You think you're a big man now' prior to his attack,

20   and his continued attack of the Officer, is evidence of the nature and ferocity of the attack."  Resp.

21   Ex. B, p. 3.

22        The evidence to support the disciplinary decision was constitutionally sufficient and

23   reliable.  Palmer's right to due process was not violated by prison officials' decision to find him

24   guilty or to assess him a SHU term and credit forfeiture of 150 days.  He is not entitled to the writ

25   of habeas corpus.

26

27   C.    Miscellaneous Matters

28

**United States District Court**
For the Northern District of California

1    When he filed his traverse, Palmer filed a motion to conduct discovery and a motion for

2  an evidentiary hearing.  Both motions will be denied.

3    Palmer did not request any discovery relevant to the issues here when he was in state court.

4  His request for discovery in state court was to prove a specific point, i.e., he asked in his state

5  habeas petition for the court to "issue an order permitting petitioner to conduct further discovery

6  to obtain statements from witnesses to use as evidence to demonstrate the prejudicial effect

7  petitioner suffered from not being given an investigator."  Petition, Ex. A, p. 13.  The requested

8  discovery would have been irrelevant in state court as it would be here because Palmer signed a

9  document waiving the investigative employee.  Whether the absence of an investigator prejudiced

10  the prisoner is irrelevant when the prisoner waived the investigative employee.

11    The discovery requests accompanying Palmer's current motion to conduct discovery

12  convince the court that discovery should not be allowed at this late date.  First, Palmer's discovery

13  requests would not succeed as written.   The discovery requests are entitled "deposition and

14  production requests" and make written inquiries of three non-parties: correctional officers Burgh,

15  Valdez and Nilsson.  The requests are like interrogatories, but interrogatories may not be served

16  on non-parties.   Second, even if Palmer could figure out a valid procedural device to make

17  inquiries of a non-party (e.g., a deposition), the information he seeks would make no difference

18  in the analysis of Palmer's habeas petition.  The inquiries directed at Burgh appear to concern a

19  2004 proceeding and not the January 12, 2003 proceeding that is at issue in this case.   The

20  inquiries directed at Valdez concern the facts of the 10:00 a.m. and 11:30 a.m. incidents, but those

21  inquiries are not proper here where the only question is the existence of some evidence <u>in the

22  record</u> to support the decision.  Indeed, <u>Superintendent v. Hill</u>, 472 U.S. at 455, specifically

23  directs courts not to reweigh evidence or examine witness credibility.   The inquiries directed at

24  Nilsson concern the confiscation of Palmer's paperwork on January 8, 2003.   Nilsson's version

25  of the confiscation of paperwork is not necessary because the court accepts as true that the

26  paperwork was confiscated on January 8 and unavailable to Palmer on January 12, 2003.

27    Palmer has not shown good cause for the court to grant leave for him to conduct discovery

28

**United States District Court**

For the Northern District of California

1    under Rule 6 of the Federal Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254. <u>See</u>

2    <u>Bracy v. Gramley</u>, 520 U.S. 899, 908-09 (1997). Moreover, Palmer has not shown he sought this

3    information while in state court. The motion for leave to conduct discovery is DENIED.

4         The court also DENIES the request for an evidentiary hearing in this action. Although

5    petitioner contends he requested an evidentiary hearing in state court, his state petition did not do

6    so. <u>See</u> Petition, Ex. A, p. 13. He did request in state court permission to do discovery on the

7    prejudicial effect of not having an investigative employee but, as noted earlier, that would be

8    irrelevant because Palmer signed a waiver of an investigative employee. Since the point on which

9    Palmer sought discovery in state court would have been irrelevant, the state court did not need to

10   hold an evidentiary hearing. Palmer has not satisfied the requirement under 28 U.S.C. §

11   2254(e)(2) for an evidentiary hearing. Palmer failed to act with diligence to develop the factual

12   basis of his claim in the state superior court. <u>See</u> <u>Williams (Michael) v. Taylor</u>, 529 U.S. 420,

13   432 (2000). "Diligence will require in the usual case that the prisoner, at a minimum, seek an

14   evidentiary hearing in state court in the manner prescribed by state law." <u>Id.</u> at 437.

15        Even if an evidentiary hearing is allowable because a prisoner is able to clear the hurdle

16   posed by § 2254(e)(2), the district court retains discretion not to hold an evidentiary hearing.

17   <u>Downs v. Hoyt</u>, 232 F.3d 1031, 1041 (9th Cir. 2000). The district court may permit expansion

18   of the record to obviate the need for a hearing. That has occurred her, as the court has considered

19   the evidence that showed that Palmer's paperwork was taken away from him on January 8, 2003

20   and that he did not have it on the day of the hearing. Palmer has not identified specifically the

21   evidence he wants to present at an evidentiary hearing, and the court is left to assume that it is the

22   material he wants to obtain through the discovery mentioned in his discovery requests. As

23   explained above, the material sought to be discovered would not make a difference in this habeas

24   action. Palmer apparently wants to expand the inquiry to include different decisions (e.g., the use

25   of the January 12, 2003 disciplinary decision as a basis for a 2004 decision to put him in ad-seg)

26   and wants to expand the inquiry about his guilt, but neither of those areas are proper subjects for

27   this court's consideration. The court will not hold an evidentiary hearing to develop facts that will

28

not affect the outcome here.

///

**CONCLUSION**

    The petition for writ of habeas corpus is DENIED on the merits.  The clerk shall close the file.

    IT IS SO ORDERED.

Dated:  December 21, 2005

_____
SUSAN ILLSTON
United States District Judge

United States District Court

For the Northern District of California

14